Hayk Yeghoyan, Esq. [Bar No.: 296820]
YMPK Law Group, LLP
5503 Cahuenga Blvd., Suite 200
North Hollywood, CA 91601
Phone: (323) 999-4903
Fax: (818) 967-5353

Attorney for Plaintiffs,
NOHO DIAGNOSTIC CENTER, INC., USTIANA SHAGINIAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOHO DIAGNOSTIC CENTER, INC.; USTIANA SHAGINIAN, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT and DOE OFFICERS OF THE LOS ANGELES POLICE DEPARTMENT; KENNETH FRANCO; CHIEF MICHAEL MOORE; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: 2:24-cv-07952 <br><br> **COMPLAINT FOR:** <br><br> **VIOLATION OF FOURTH AMENDMENT (42.U.S.C. § 1983) MUNICIPAL LIABILITY (42.U.S.C. § 1983)** <br><br> **SUPPLEMENTAL STATE CLAIMS** <br><br> **NEGLIGENCE NEGLIGENT HIRING CALIFORNIA CIVIL CODE § 52.1** <br><br> **DEMAND OF JURY TRIAL** |

NOW COME Plaintiffs NOHO DIAGNOSTIC CENTER, INC. and USTIANA SHAGINIAN, by and through their attorneys, YMPK Law Group, LLP, and as for their Complaint against Defendants, CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT and DOE OFFICERS OF THE LOS ANGELES POLICE DEPARTMENT, KENNETH FRANCO, CHIEF MICHAEL MOORE and DOES 1 through 20, and state the

1

following:

I.    **JURISDICTION AND VENUE**

1.   Jurisdiction and venue is vested in this Court pursuant to 28 U.S.C. § 1331, as a federal question arising under the Fourth Amendment and the Fourteenth Amendment of the United States Constitution.

2.   Plaintiffs are entitled to bring this action pursuant to 42 U.S.C. § 1983, which enables every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, to bring an action at law, suit in equity, or other proper proceeding for redress.

3.   This suit is also brought pursuant to 28 U.S.C. § 1343(a)(3), which enables any citizen of the United States to bring suit in order to redress the deprivation of rights, privileges, and immunities secured by the constitution and laws of the United States.

4.   This Court has pendant and supplemental jurisdiction over the California state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

5.   Venue is proper because the claims alleged herein arose from events or omissions that occurred in the County of Los Angeles. Therefore, venue lies in the Central District of California pursuant to 28 U.S.C. § 1391 (b)(2).

II.    **PARTIES**

6.   Plaintiff USTIANA SHAGINIAN is and at all relevant times herein mentioned, a citizen of the United States of America and a resident of the County of Los Angeles in the State of California.

7.   Plaintiff NOHO DIAGNOSTIC CENTER, INC. is and at all relevant times herein mentioned, a corporation doing business in the County of Los Angeles, State of California. Plaintiff NOHO DIAGNOSTIC CENTER, INC. is a diagnostic healthcare

COMPLAINT FOR DAMAGES
2:24-cv-07952

facility located in the heart of Van Nuys, California, at the hectic intersection of Whitsett Ave. and Victory Blvd. The North and West windows are tinted to maintain a sense of privacy for patients. Plaintiff NOHO DIAGNOSTIC CENTER, INC. is part of an open shopping plaza and is adjacent to five other businesses and sits directly across from another large shopping plaza with nine additional businesses. Notably, Plaintiff NOHO DIAGNOSTIC CENTER, INC. is approximately *2.4 miles* from *the Los Angeles Police Department, Van Nuys Division.*

8. At all times material herein, Defendant LOS ANGELES POLICE DEPARTMENT ("LAPD") was and is a public entity existing within the State of California, County of Los Angeles. Plaintiffs are informed and believe that LAPD is and was the official police agency for Defendant CITY OF LOS ANGELES at all times mentioned herein, and is the employer of the individual officers named as DOE OFFICERS OF THE LOS ANGELES POLICE DEPATMENT, KENNETH FRANCO and CHIEF MICHAEL MOORE in this action.

9. At all times material herein, Defendant CITY OF LOS ANGELES ("CITY OF LOS ANGELES) was and is a municipal corporation duly organized and existing under the Constitution and laws of the State of California and is, or was, the employer of LAPD, as well as one, or all, of the individual DOE Defendants in this action.

10. At all times material herein, Defendant MICHAEL MOORE ("CHIEF MOORE") is and was the LAPD police chief and a policymaker for his department. He is being sued individually and in his official capacity.

11. At all times material herein, Defendant Kenneth Franco ("OFFICER FRANCO") was an LAPD officer assigned to the Narcotics Enforcement Detail for North Hollywood Division of the LAPD. OFFICER FRANCO is the affiant of the application submitted in support of the search warrant issued to search the premises of Plaintiff NOHO DIAGNOSTIC CENTER, INC. Plaintiffs are informed, believe, and thereupon allege that OFFICER FRANCO was the leader of the SWAT team which unlawfully and

COMPLAINT FOR DAMAGES
2:24-cv-07952

unreasonably executed the aforesaid search warrant. He is being sued individually and in his official capacity.

12. Defendant DOE OFFICERS OF THE LOS ANGELES POLICE DEPARTMENT ("LAPD Officers") are and at all times mentioned herein were, unknown Officers employed by the LAPD, who were acting within the course and scope of their employment at the time they undertook the activities alleged herein and were, at all times herein mentioned, acting under color of state law as employees, agents, and representatives of every other defendant.

13. The true names of DOES 1 through 20, inclusive, are not now known to Plaintiffs who therefore sue these Defendants by fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and based thereon allege that each of the fictitious named defendants are responsible for the acts complained of herein.

14. At all relevant times herein, each of the Defendants was an agent, servant, or employee of each of the remaining Defendants acting under color of state law, and was at all times acting within the time, purpose or scope of said agency or employment, and was acting with the express or implied knowledge, permission or consent of the remaining Defendants, and each of them. Each of the Defendants held out the other as its authorized representative and each of the Defendants ratified the conduct of its agents. At all times herein mentioned, DOES 1-20 were and are Defendants whose identity is unknown at this time who supervised, controlled, or were in some manner responsible for the activities alleged herein and proximately caused Plaintiffs' damages.

## III.  COMPLIANCE WITH PRE-SUIT REQUIREMENTS

15. On November 3, 2023, within the limitation period after the claims herein arose, Plaintiff served a Notice of Claim on the City of Los Angeles in compliance with Gov't Code § 911.2.

4

COMPLAINT FOR DAMAGES
2:24-cv-07952

16. On March 18, 2024, the County gave notice that it had rejected the claim.

17. This action has been commenced within the applicable limitations period for the claims asserted herein.

## IV.    FACTUAL BASIS FOR THE CLAIMS ASSERTED

18. Plaintiff NOHO DIAGNOSTIC CENTER, INC. (hereinafter, "TARGET PREMISES") is a healthcare facility specializing in diagnostic services, including imaging such as X-rays, MRI, CT scans, and ultrasounds.

19. On October 12, 2023, based on the supporting affidavit of OFFICER FRANCO, a search warrant was issued for the TARGET PREMISES.

20. The warrant described the TARGET PREMISES as a taller-than-average, single-story commercial building with signage reading "NOHO DIAGNOSTIC CENTER" and "MRI" and "X-RAY."

21. The warrant alleged potential illegal cannabis cultivation at the TARGET PREMISES and authorized the seizure of cannabis and controlled substances under the Uniform Controlled Substance Act.

22. As part of the application for the search warrant, OFFICER FRANCO stated that the Los Angeles Department of Building and Safety received a noise complaint about the air conditioning units, suggesting cannabis cultivation at the TARGET PREMISES.

23. OFFICER FRANCO conducted surveillance on multiple dates in 2023, reporting the "distinct odor of live cannabis plant and not the odor of dried cannabis being smoked," tinted windows – which he attributed to efforts to conceal cannabis cultivation, security cameras –which he associated with locations where cannabis is grown to prevent theft, and two individuals in similar attire at the premises – whom he concluded were performing maintenance or expanding the cultivation operation.

24. OFFICER FRANCO compared the power usage of the TARGET PREMISES to nearby businesses and found it significantly higher.

5

25. OFFICER FRANCO, therefore, concluded that the TARGET PREMISES was cultivating cannabis, disregarding the fact that it is a diagnostic facility utilizing an MRI machine, X-ray machine, and other heavy medical equipment—unlike the surrounding businesses selling flowers, chocolates, and childrens' merchandise, none of which would require significant power usage.

26. Adding to the list of OFFICER FRANCO's utterly reaching and ultimately failed conclusions, OFFICER FRANCO conducted an internet search, and this futile check of "public record documents" revealed that the owner of the TARGET PREMISES is "Fouad Ashour."

27. It is unclear what "public record documents" OFFICER FRANCO "searched," but a proper business search of the TARGET PREMISES on the California Secretary of State's website would have revealed that it was incorporated in 2021, with PLAINTIFF USTIANA SHAGINIAN serving as its Chief Executive Officer.

28. OFFICER FRANCO, however, did learn that the TARGET PREMISES holds a valid City of Los Angeles Business Tax Registration Certificate as "NOHO DIAGNOSTIC CENTER, INC."

29. Despite the TARGET PREMISES' legitimate business certification, OFFICER FRANCO, as a *natural next step*, contacted LAPD's Gang and Narcotics Division-Cannabis Support Unit. OFFICER FRANCO learned that the TARGET PREMISES, *a medical diagnostic center*, does not have a license to cultivate cannabis, a finding he promptly labeled a "violation of the California Health and Safety Code."

30. Based on his *15 years* as an LAPD officer and *twelve hours* of narcotics training, and based upon the presence of security cameras (typical of any reasonable commercial business), tinted windows (a reasonable practice for any medical facility concerned with patient privacy), high power usage (as any diagnostic facility), the alleged odor of cannabis plants (in a busy shopping plaza with no prior reports), the absence of a cultivation permit (which no diagnostic healthcare facility would possess), and the

6

COMPLAINT FOR DAMAGES
2:24-cv-07952

presence of two men wearing identical company-branded shirts (unexpected of individuals involved in illegal cultivation), OFFICER FRANCO found probable cause for cannabis cultivation at the TARGET PREMISES.

31. On or about October 12, 2023, OFFICER FRANCO's search warrant was issued by Magistrate Diego H. Edber.

32. On or about October 18, 2023, OFFICER FRANCO and LAPD Officers, acting within the course and scope of their duties as employees of the LAPD and acting as representatives of the CITY OF LOS ANGELES, executed the search warrant at the TARGET PREMISES pursuant to the rules, guidelines, procedures and protocols of LAPD.

33. Upon entry, the LAPD Officers detained the sole employee on-site and conducted a search of all offices within the TARGET PREMISES, including the office containing the Magnetic Resonance Imaging (MRI) machine.

34. Four LAPD Officers physically entered the MRI office, while the remaining LAPD Officers continued down the hallway to search the remaining offices.

35. At 4:57 PM, the LAPD Officers, including OFFICER FRANCO, concluded their search and headed toward the entrance of the TARGET PREMISES.

36. The search yielded no live cannabis plants, nor any incriminating evidence or illegal substances.

37. As they were exiting, one of the LAPD Officers glanced inside the MRI office, as the door had been left open. He then closed the door, and the group continued toward the entrance.

38. The LAPD Officers then released the detained on-site employee and allowed her to re-enter the TARGET PREMISES. She was instructed to contact the owner or manager of the TARGET PREMISES. Following the LAPD Officers' request, the employee contacted the manager and requested the manager's immediate presence.

COMPLAINT FOR DAMAGES
2:24-cv-07952

39. Considering the search yielded no live cannabis plants or any other contraband, and the detained employee had already been released, it was evident—or should have been—that any further action taken by the LAPD Officers would exceed the scope of the search warrant.

40. However, some LAPD Officers continued to roam freely throughout the TARGET PREMISES, casually engaging in conversation with one another. The whole operation was nothing short of a disorganized circus, with no apparent rules, procedures, or even a hint of coordination.

41. At 5:01 PM, an LAPD Officer was observed standing in front of the MRI office door, reading the sign that read, "Warning. Magnetic Field. High Frequency Yield. Metal Parts and Medical Instruments of All Types prohibited." Additionally, the warning sign displayed photographs of items prohibited in the room, which included scissors, screwdrivers, keys, watches, and credit cards.

42. The LAPD Officer then proceeded to the end of the hallway and returned a few seconds later with another LAPD Officer.

43. Said LAPD officer, dangling a rifle in his right hand, with an unsecured strap, approached the MRI Office, glanced at the large warning sign on the door, reopened the door with his left hand and proceeded inside.

44. Expectedly, the magnetic force of the MRI machine attracted the LAPD Officer's loose rifle, securing it to the machine.

45. The MRI machine was equipped with a sealed emergency pull button labeled, "Caution, Emergency Use Only." This button was intended to be activated solely in the event of a genuine emergency, such as a health risk to a patient inside the machine, a fire, or an evacuation situation.

46. Rather than seeking assistance from the on-site employee, or waiting for the manager's arrival, one of the LAPD Officers made the unilateral decision to break the seal and activate the emergency shutdown button, deactivating the MRI machine.

8

COMPLAINT FOR DAMAGES
2:24-cv-07952

47. This action caused the MRI's magnet to rapidly lose superconductivity, leading to the evaporation of approximately 2000 liters of helium gas and resulting in extensive damage to the MRI machine.

48. The LAPD Officer then grabbed his rifle, this time wearing the strap over his shoulder as he should have when he entered the MRI room, and proceeded to walk toward the entrance, leaving the magazine full of bullets on the floor of the MRI office.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**42 USC § 1983 - Violation of the Fourth Amendment**
(Plaintiffs against Los Angeles Police Department, Officer Franco and LAPD Officers)

49. Plaintiffs make a claim under 42 USC § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

50. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the constitution shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress.

51. The Fourth Amendment of the United States Constitution guarantees: "the right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches* and seizures, shall not be violated, and no warrants shall issue, but upon *probable cause*, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

52. In G.M. Leasing Corp. v. United States, 429 U.S. 338, 353 (1977), the Supreme Court established that the Fourth Amendment protects business and corporations from

COMPLAINT FOR DAMAGES
2:24-cv-07952

unreasonable searches and seizures, see also <u>Marshall v. Barlow's, Inc.</u>, 436 U.S. 307 (1978).

53. In <u>Franks v. Delaware</u>, 438 U.S. 154, 164 (1978), the Supreme Court established that the use of false statements to obtain a search warrant violates the Fourth Amendment warrant requirement.

54. Defendants LAPD, LAPD OFFICERS, OFFICER FRANCO, CHIEF MOORE, and DOES 1 through 20, at all times relevant hereto, were acting under the color of State law in their capacity as agents, officers, or employees of Defendant CITY OF LOS ANGELES, and their acts or omissions were conducted within the scope of their official duties or employment.

55. Plaintiffs in this action are citizens of the United States and Defendants LAPD OFFICERS, OFFICER FRANCO and CHIEF MOORE are persons who, under the color of law, subjected Plaintiffs, citizens of the United States, to the deprivations of their rights, privileges or immunities secured by the Fourth Amendment to the United States Constitution and are therefore liable to the Plaintiffs, who suffered damages, under 42 U.S.C. § 1983.

56. To the extent any of these constitutional deprivations require a showing of specific intent and/or motive, Defendants LAPD, LAPD OFFICERS, OFFICER FRANCO and CHIEF MOORE acted intentionally, maliciously, and/or with reckless disregard for the natural and probable consequences of their actions.

57. The unlawful misconduct of Defendants LAPD, LAPD OFFICERS, OFFICER FRANCO and CHIEF MOORE was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

58. More specifically, OFFICER FRANCO is liable for fabricating false statements intended to support the affidavit for the search warrant application, fully aware that these falsehoods would mislead the Magistrate into believing there was probable cause to issue the search and seizure warrant.

COMPLAINT FOR DAMAGES
2:24-cv-07952

59. OFFICER FRANCO is further liable because he knew, or should have known, that by misleading the Magistrate into issuing a search warrant without probable cause, he was intruding upon Plaintiffs' business and personal privacy. The resulting search of Plaintiffs' property violated their Fourth Amendment rights to be free from unreasonable searches, as guaranteed by the United States Constitution.

60. LAPD is liable for authorizing OFFICER FRANCO's use of false and perjured statements in the affidavit submitted under oath in support of the search warrant application, knowing it would deceive the Magistrate into issuing the warrant without probable cause. This led to the violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable searches, as protected by the United States Constitution.

61. LAPD, LAPD Officers, and OFFICER FRANCO are further liable for executing the search based on a warrant obtained through false and perjured statements, in violation of Plaintiffs' Fourth Amendment right to be free from unreasonable searches, as guaranteed by the United States Constitution.

62. Destruction of [property] during search violates Fourth Amendment if not necessary to effectively execute search warrant. Tarpley v. Greene, 684 F.2d 1, 9 (D.C. Cir. 1982), and officers may be held liable under section 1983 for executing a warrant in an unreasonable manner. Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir. 1979).

63. The extensive damage to Plaintiffs' property was neither accidental nor incidental to the effective execution of the search warrant, but rather the result of an unreasonable and/or recklessly indifferent LAPD Officer walking into an already searched and cleared MRI room with his rifle carelessly dangling in one hand.

64. As a direct and proximate result of the aforementioned acts or omissions of Defendants LAPD, LAPD Officers, OFFICER FRANCO, CHIEF MOORE, and Does 1 through 20, individually and collectively, Plaintiffs suffered substantial economic damages.

COMPLAINT FOR DAMAGES
2:24-cv-07952

65. The actions described above were intentional, wanton, malicious, oppressive, and without fear of the legal consequences for their constitutional misconduct, thus entitling Plaintiffs to an award of punitive and compensatory damages.

66. Plaintiffs are entitled to an award of attorneys' fees, costs and expenses under 42 U.S.C. Section 1988 due to Defendants' violations of Plaintiffs' Civil Rights.

**SECOND CAUSE OF ACTION**

Municipal/Supervisory Liability—Unconstitutional Policy, Practice, Custom and Failure to Train and/or Discipline (42 U.S.C. § 1983)
(Plaintiffs Against Defendants City of Los Angeles and Michael Moore)

67. Plaintiffs repeat, reallege, and incorporate by reference all allegations contained in all previous paragraphs as though fully set forth at length herein.

68. As described above, the acts of OFFICER FRANCO and LAPD Officers, acting under the color of law, deprived Plaintiffs of their rights under the United States Constitution.

69. Based on the aforementioned facts, Defendants CITY OF LOS ANGELES and CHIEF MOORE maintained unconstitutional customs, practices, and policies of unreasonable and unlawful searches and warrants.

70. Defendants CITY OF LOS ANGELES and CHIEF MOORE had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Defendants CITY OF LOS ANGELES and CHIEF MOORE also acted or failed to act with deliberate indifference to both the foreseeable consequences of these policies and to Plaintiffs' constitutional rights.

71. As a direct and proximate result of the aforementioned acts or omissions of Defendants CITY OF LOS ANGELES and CHIEF MOORE, Plaintiffs have suffered economic losses.

72. The conduct of Defendants CITY OF LOS ANGELES and CHIEF MOORE was willful, wanton, malicious, and done with a reckless disregard for the rights of Plaintiffs and

COMPLAINT FOR DAMAGES
2:24-cv-07952

therefore warrants the imposition of exemplary and punitive damages in an amount adequate to punish the wrongdoers and deter future misconduct.

### **THIRD CAUSE OF ACTION**
**[Negligent Hiring, Training and Retention]**
(By Plaintiff Against Defendants City of Los Angeles and LAPD)

73. Plaintiffs repeat, reallege and incorporate by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

74. Plaintiffs are informed and believe and thereon allege that Defendants CITY OF LOS ANGELES and LAPD were aware of the unfitness of OFFICER FRANCO and LAPD OFFICERS and that Defendants CITY OF LOS ANGELES and LAPD as a policy, custom and practice continued to employ and utilize OFFICER FRANCO and LAPD OFFICERS resulting in the violation of the Civil Rights of Plaintiffs.

75. At all times herein mentioned, Defendants CITY OF LOS ANGELES and LAPD were negligent in supervising the conduct of OFFICER FRANCO and LAPD OFFICERS, resulting in the extensive destruction of Plaintiffs' property.

76. Plaintiffs are informed and believe, and thereon allege, that on or before October 2023, Defendants CITY OF LOS ANGELES and LAPD negligently hired, trained, supervised, employed and/or managed OFFICER FRANCO and LAPD OFFICERS, by failing and refusing to train OFFICER FRANCO and LAPD OFFICERS in proper use of their firearms, so that they did not pose an unreasonable risk of harm; in that the Defendants knew, or in the exercise of reasonable diligence, should have known, that OFFICER FRANCO and LAPD OFFICERS were unreasonable in the manner of conducting searches and in a manner that demonstrated disregard for the rights and safety of civilian citizens.

COMPLAINT FOR DAMAGES
2:24-cv-07952

77. As a legal, direct and proximate result of the aforementioned negligence by Defendants CITY OF LOS ANGELES and LAPD, and each of them, Plaintiffs suffered economic damages.

78. Defendant CITY OF LOS ANGELES is liable to Plaintiffs for the acts of its public employees, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

**FOURTH CAUSE OF ACTION**
**(Violation of the Bane Act (Cal. Civ. Code § 52.1))**
**(**By Plaintiffs against all Defendants)

79. Plaintiffs repeat, reallege and incorporate by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

80. California Civil Code, Section 52.1 (the Tom Bane Civil Rights Act) states "if a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States [...] may institute and prosecute in his [...] own name on his [...] behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct." Cal. Civ. Code § 52.1.

81. As alleged herein, LAPD subjected Plaintiffs to an unlawful and unreasonable search, which led to the extensive destruction of Plaintiffs' property.

82. By engaging in an unreasonable and unlawful search, Defendants violated Plaintiffs' rights secured under the Constitution of the United States. The Defendants' actions violated the Bane Act.

83. Plaintiffs are entitled to damages pursuant to Civil Code §§ 52 and 52.1.

14

COMPLAINT FOR DAMAGES
2:24-cv-07952

84. The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages in an amount adequate to punish the wrongdoers and deter future misconduct.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE
(By Plaintiffs against all Defendants)

85. Plaintiffs repeat, reallege and incorporate by reference the allegations contained in all previous paragraphs as though fully set forth at length herein.

86. The conduct of Defendants, and each one of them, as set forth herein, was tortious in that Defendants breached their duty of care to Plaintiffs when OFFICER FRANCO and LAPD OFFICERS conducted an unlawful and unreasonable search of the TARGET PREMISES.

87. Defendants CITY OF LOS ANGELES and CHIEF MOORE failed to supervise, review, and ensure that its officers abided by the standards of care and failed to enact appropriate standards, procedures, and training that would have prevented such harm to Plaintiffs.

88. At all times herein mentioned, OFFICER FRANCO AND LAPD Officers failed to follow procedural dictations and intentionally, recklessly and/or negligently caused extensive property damage to Plaintiffs.

89. At all times material herein, OFFICER FRANCO, and LAPD Officers had a duty to act reasonably to avoid, or foresee, the risk that said Defendants themselves, or their colleagues or subordinates, would commit the acts complained of herein.

90. LAPD, CHIEF MOORE, CITY OF LOS ANGELES, AND DOES1 through 20, and each of them, had a duty to act reasonably to avoid, or foresee, the risk that said Defendants themselves, or their colleagues or subordinates, would commit the acts complained of herein.

COMPLAINT FOR DAMAGES
2:24-cv-07952

91. LAPD, CHIEF MOORE, CITY OF LOS ANGELES, DOES 1 through 20, and each of them, breached their duty of care by not acting reasonably under the circumstances of such risk, as described herein above, and/or by impeding or otherwise curtailing the civil rights of Plaintiffs.

92. LAPD, CHIEF MOORE, CITY OF LOS ANGELES, and DOES 1 through 20, and each of them, breached their duty of care by not acting reasonably under the circumstances of such risk, as described herein above, and/or by failing to discharge their respective duties to appropriately screen and train their employees and investigate and discipline their employees for misconduct.

93. All said DEFENDANTS, and each of them, ratified the aforesaid conduct committed under color of law.

94. Each DEFENDANT'S aforesaid breaches of duty were proximate and actual causes of injury to Plaintiffs.

95. The conduct of said DEFENDANTS, and each of them, was willful, wanton, malicious, and done with a reckless disregard for the rights of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages in an amount adequate to punish the wrongdoers and deter future misconduct.

96. Defendant CITY OF LOS ANGELES is liable to Plaintiffs for the acts of its public employees for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## V.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment against all Defendants, as follows:

General and compensatory damages for Plaintiffs for the violations of their federal constitutional and statutory rights, all to be determined according to proof;

An award of attorneys' fees pursuant to 42 U.S.C. 1988;

Costs of suit;

16

COMPLAINT FOR DAMAGES
2:24-cv-07952

Pre-and post-judgement interest as permitted by law;

Punitive Damages;

Such other and further relief as the Court may deem just and proper.

Dated September 18, 2024                                    Signature: _Hayk Yeghoyan_

By: Hayk Yeghoyan, Esq.

YMPK Law Group, LLP.

17

COMPLAINT FOR DAMAGES
2:24-cv-07952